# CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Nancy Hoy

 v.

City of Alexandria et al.

November 2, 2005

Case No. CH0500294

BY JUDGE LISA B. KEMLER

This matter is before the Court on the Complainant Nancy Hoy's motion for temporary injunction and declaratory judgment to prohibit the City from repainting portions of the exterior of her property located at 325 Duke Street. The property, located in the Old and Historic Alexandria District, is a colonial federal style home built in the early nineteenth century. Upon consideration of the testimony and exhibits presented at the evidentiary hearing, the memoranda submitted by counsel, and the relevant statutes and ordinances, I am of the opinion that the request for a temporary injunction should be denied based on the following analysis.

### Factual Summary

In August 2002, the property was declared unfit for human habitation and was secured from entry. Since that time, the Complainant and the City have been taking steps to correct the problems. However, in January 2004, the City initiated the process necessary to bring the property into the City's spot blight abatement program pursuant to Virginia Code § 36-49.1:1 and the City of Alexandria Charter § 2.04(b), codified at City of Alexandria Code § 8-1-141 *et seq*. At that time and for at least the last forty years, the exterior walls of the property were white, the window trim was white, and the shutters were black. Beginning in September 2004 and concluding in November 2004, the

80

Complainant had the exterior of the property repainted. (Complainant's Hearing Exhibit ("Hr'g Ex.") 11 (Complainant's Affidavit).) The exterior walls are currently painted green, the roof, coal chute, shutter dogs, window frames and windows are painted a rust color, and the shutters are painted a yellow color. (Complainant's Hr'g Ex. 1.)

On October 5, 2004, the City of Alexandria Planning Commission approved the Spot Blight Abatement Plan ("the Plan") for the property. The Plan contains a work plan setting forth seventeen separate conditions "to return the property to a code compliant condition." (Complainant's Hr'g Ex. 11.) Condition # 14 is to "scrape and paint exterior surfaces." On October 16, 2004, a public hearing of the Alexandria City Council was held and the City Council unanimously approved the Plan designating the property as blighted, but modified Condition # 14 to include that the color palette meet the approval of the Department of Planning and Zoning. (Complainant's Hr'g Ex. 11 and Exhibit 2 attached to City's Mem. in Opp. to Complainant's Motion for Temporary Injunction.) Following the City Council's action, the parties continued to engage in discussions about the exterior paint color. In an effort to resolve all of the exterior paint issues, the Complainant offered "to consider repainting some of the trim on the house." (Complainant's Hr'g Ex. 11.) Ultimately, the City agreed to permit the exterior walls to remain green but gave notice that it intended to repaint the roof, door, shutters, shutter dogs, and coal chute black and the wood trim on the window frames and windows a tan or creme color. (Complainant's Hr'g Ex. 11 and Respondent's Hr'g Ex. C.)

Stephanie Diamond, an architect, testified as an expert for the Complainant. She testified that the green color is historically appropriate, but that the rust color and the yellow color are similar to colors on the chart of historic exterior colors. (Complainant's Hr'g Ex. 8.) More importantly, she testified that the current color scheme (*i.e.*, the three colors in combination) of the property is not historically appropriate for a colonial federal house in the Old and Historic Alexandria District. She further opined that, if the current yellow color were changed to a "Knightly Straw" color (see Complainant's Hr'g Ex. 8), the color scheme might be appropriate. Hal Phipps, Deputy Director of the Department of Planning and Zoning and the Division Chief for Zoning and Land Use (which includes historic preservation), testified that the current color scheme of the property is not appropriate for the architectural style of the property and that the color scheme does not meet the Board of Architectural Review's ("the BAR") design guidelines and is in violation of the zoning ordinance. While both experts testified that they were not aware of the City's getting involved when a homeowner simply repaints the exterior of

an existing structure, there was no evidence presented that such repainting was not in conformity with either the BAR design guidelines or the City of Alexandria zoning ordinance.

The Complainant contends that the City does not have the authority to require that the paint color or combination of colors be approved by the Department of Planning and Zoning as part of the repairs being undertaken pursuant to the Spot Blight Abatement Plan and that such action by the City is arbitrary and capricious and violates Dillon's Rule. The Complainant, therefore, seeks an injunction prohibiting the City from repainting her property. It is the City's position that it has the authority under the spot blight procedures to paint the exterior color of a property in an historically appropriate fashion, that the exterior color scheme approved by the Department of Planning and Zoning is historically appropriate for the age, architectural style and location of the property, and that the City has the authority to take the proposed action pursuant to Virginia Code § 36-49.1:1, the City of Alexandria Charter §§ 2.04.2(b) and 2.04(w), and the City of Alexandria Zoning Ordinance § 10-100.

*Legal Analysis*

In determining whether to grant a preliminary injunction, "an extraordinary remedy," four factors must be considered. *Hughes v. Network Sys. v. Interdigital Communications Corp.*, 17 F.3d 691, 693 (4th Cir. 1994). These factors are: "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is not granted; (2) the likelihood of harm to the defendant if the preliminary injunction is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest." *Id. See also, Villalobos v. City of Norfolk*, 62 Va. Cir. 158 (2003).

Based on the evidence presented, I find that the balance of hardships is substantially equal as between the parties. Regarding the likelihood that the Complainant will succeed on the merits, I find that the City has the authority to require that the Department of Planning and Zoning approve the color palette for the exterior paint of the property as part of the Spot Blight Abatement Plan. In deciding this issue, it is necessary to consider various state statutes, Alexandria City Charter, the City Code provisions and the zoning ordinances.

Virginia Code § 36-49.1:1(A) provides, in pertinent part, as follows:

[A]n authority, or any locality, shall have the power to acquire or repair any blighted property as defined in § 36-49 . . . and further, shall have the power to hold, clear, repair, manage, or dispose of such property for purposes consistent with this title.

"Blighted areas" are defined in § 36-49 as "areas . . . with buildings or improvements which, by reason of dilapidation, obsolescence, overcrowding, faulty arrangement of design, lack of ventilation, light and sanitary facilities, excessive land coverage, deleterious land use or obsolete layout, *or any combination of these or other factors*, are detrimental to the safety, health, morals, or welfare of the community." (Emphasis added.) Pursuant to § 36-49(4), localities are empowered "to carry out any work or undertaking" "[t]o permit the preservation, repair, or restoration of buildings of historic interest. . . ." Though somewhat broader than the state statute, Section 2.04.2(b) of the Charter of the City of Alexandria grants the City the power:

To acquire, by purchase, exchange, gift, lease, condemnation, or otherwise, real property in the *city* which is blighted, deteriorated, deteriorating, *a blighting influence on the neighborhood*, or *in nonconformance with the City's zoning code or master land use plan*; to clear, demolish, or rehabilitate any such real property; and to dispose of any such real property by lease or sale to any person.

(Emphasis added.)

Pursuant to the spot blight abatement procedure, "the planning commission shall determine whether:

1. The owner has failed to cure the blight or present a reasonable plan to do so;
2. The property is blighted;
3. The plan for the repair or other disposition of the property *is in accordance with the locally adopted comprehensive plan, zoning ordinances, and other applicable land use regulations*; and
4. The property is located within an area listed on the National Register of Historic Places. In such instances, the

planning commission shall consult with the locally established architectural review board, if any, regarding the repair or other disposition of the property by the authority or governing body."

See Virginia Code § 36-49.1:1(E) (emphasis added).

Section § 36-49.1:1(F) provides that, in considering the findings and recommendations of the planning commission, the governing body, in this case the Alexandria City Council, may, after a public hearing, "affirm, *modify*, or reject the planning commission's findings and recommendations." (Emphasis added.)

As noted previously, the property in question is located in the Old and Historic Alexandria District. Section 10-100 of the City of Alexandria Zoning Ordinance provides for the establishment of such district "to protect community health and safety, to promote the education, prosperity, and general welfare of the public through the identification, preservation, and enhancement of buildings, structures, landscapes, settings, neighborhoods, places, and features with special historical, cultural, artistic, and architectural significance." Before a building may be "erected, reconstructed, *altered*, or restored within the Old and Historic Alexandria District," the Board of Architectural Review ("the BAR") must approve an application for certificate of appropriateness. § 10-103, City of Alexandria Zoning Ordinance. The purpose of this requirement is "to prevent any construction, reconstruction, *alteration*, or restoration incongruous *to such existing building or structure, area surroundings* or memorial character." § 10-105(1)(A)(1) (emphasis added). I find that changing the exterior paint color of an existing building in the Old and Historic Alexandria District under the circumstances presented herein constitutes an "alteration" within the meaning of § 10-105. Pursuant to § 10-105(1)(A)(2)(d) of the City of Alexandria Zoning Ordinance, the BAR is required to consider the "[t]exture, material, and color, and the extent to which any new architectural features are historically appropriate to the existing structure and adjacent existing structures" when deciding whether to issue a certificate of appropriateness.

Thus, based upon my review of the statutes, code provisions, and zoning ordinances, as well as the evidence presented, I find that there is not a likelihood that the Complainant will succeed on the merits. For all of the reasons set forth above, the Complainant's motion for temporary injunction and declaratory judgment is denied.